UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALFREDO BARRIENTOZ,

             Plaintiff,             Case No. 1:09-cv-561

v.                                         Honorable Robert J. Jonker

L. WILSON et al.,

             Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.       Factual allegations

Plaintiff presently is incarcerated at the Pugsley Correctional Facility (MPF). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC) and the following MPF employees: Corrections Officer L. Wilson, Assistant Resident Unit Supervisor (ARUS) (unknown) Patrick; Sergeant (unknown) Morin; Warden T. G. Phillips; Step III Hearings Officer (unknown) Armstrong; ARUS (unknown) Ausdemore; Prisoner Accountant B. Rohn; Assistant Deputy Warden (ADW) (unknown) Smiley; and Administrative Officer Joe Sattler.

Plaintiff's claims surround two incidents: the denial of a new pair of tennis shoes and the failure of the MDOC to pay his initial partial filing fee in this action. First, Plaintiff alleges that his procedural due process were violated because Defendants refused to give him the shoes that he ordered. On April 7, 2008, Plaintiff placed an order for tennis shoes, which was approved by ARUS Patrick. The MDOC charged Plaintiff's account on April 10, 2008 for the shoes. When Plaintiff was called-out to pick up his property, Officer Wilson informed Plaintiff that he needed to turn in a pair of shoes before he could receive a new pair of shoes. Plaintiff, however, did not have an old pair of shoes to turn in except for the shoes on his feet. On April 27, Plaintiff spoke with ARUS Patrick but Patrick reiterated that Plaintiff must turn in a pair of shoes according to MDOC Policy Directive 04.07.112, ¶G (effective Nov. 15, 2004).[1] On April 30, Plaintiff received another property room call-out. Since he did not have a pair of shoes to turn in, Officer Wilson yelled at Plaintiff and embarrassed him in front of other prisoners.

---

[1] According to MDOC Policy Directive 04.07.112, ¶G, "prisoners must dispose of items in their possession which are in excess of the quantity limit when receiving a new or replacement item."

Plaintiff then attempted to obtain resolution of this matter through the three-step grievance process. Plaintiff filed a Step I grievance on May 1, 2008. Sergeant Morin interviewed Plaintiff regarding his Step I grievance and told Plaintiff to resolve his issue with ARUS Patrick. On May 12, Plaintiff spoke to ARUS Patrick to no avail. On June 3, Plaintiff filed a Step II grievance. During the week of June 15, Warden Phillips ordered a shake down of Plaintiff's cell to check for excessive shoes but only one pair was found. Warden Phillips, however, still denied Plaintiff's Step II grievance on June 17. In Warden Phillips' rejection, Phillips did not respond to Plaintiff's claim that he never received a Notice of Intent or a hearing on his personal property. Plaintiff argues that Defendants retaliated by shaking down Plaintiff's cell because Plaintiff "ask[ed] for the facility (Pugsley) to simply comply with its own procedural requirements mandated by the Michigan Department of Corrections (MDOC)." (Am. Compl. at 14, docket #7.) Plaintiff then filed a Step III grievance but Hearings Officer Armstrong denied Plaintiff's Step III grievance on July 14, 2008.

Plaintiff also argues that Defendants violated his First Amendment rights by retaliating against him for filing the present civil rights action by not paying his initial partial filing fee. (Am. Compl. at 11.) On June 18, 2009, the Court entered an order (docket #3) granting Plaintiff's request for leave to proceed *in forma pauperis*. The Court also required Plaintiff to pay an initial partial filing fee of $22.60 under 28 U.S.C. § 1915(b)(1) within thirty days. On July 14, Plaintiff approached ARUS Ausdemore about deducting the funds from Plaintiff's trust account. Ausdemore spoke to Rohn in prisoner accounting, who confirmed that the funds were deducted from Plaintiff's account on July 9, 2009 but had not been sent to this Court. On August 10, 2009, Plaintiff received a copy of a judgment dismissing Plaintiff's action without prejudice (docket #4) for failure

to pay the initial partial filing fee. Eventually, Plaintiff filed a motion for reconsideration, which was granted by this Court, and Plaintiff's case was reopened.

In the meantime, Plaintiff attempted to resolve the payment of his filing fee through the three-step grievance process. In his complaint, Plaintiff makes several allegations of suspicious coincidences in relation to his grievance. On August 13, 2009, Plaintiff filed a Step I grievance against Defendants Rohn and Ausdemore for failing to send Plaintiff's filing fee to this Court. When Plaintiff's Step I grievance had not been resolved within the time required by MDOC policy, Plaintiff requested a Step II grievance form. Plaintiff alleges that MPF's lack of diligence in resolving his grievance is clearly suggestive of retaliation because it is not customary practice at MPF for a grievance to be disregarded. (Am. Pet. at 10.) On September 14, Plaintiff received an interview for his Step I grievance by Defendant Rohn, the person he wrote the grievance against. In the interview, Defendant Rohn indicated that she did not know why Defendant Sattler gave her the grievance and clarified that all prisoner court orders are being handled through Jackson Regional. Plaintiff received a Step II grievance appeal form on September 15. Plaintiff suggests that he only received the Step II grievance because of the problems associated with his Step I grievance and the Court's order allowing Plaintiff to amend his complaint to add a claim for the late payment of his initial partial filing fee. On September 16, Plaintiff received a response to his Step I grievance, which was signed and dated on September 11 by Defendants Rohn and Sattler. The grievance was signed three days prior to when Plaintiff was interviewed for his Step I grievance. This Court received Plaintiff's initial partial filing fee on September 22, 2009.

In his complaint, Plaintiff also alleges two conspiracy claims. Plaintiff first states that "all Defendants named in this Claim and Civil action have at one point or another conspired by

adverse actions by Prison Officials sufficient to deter this Plaintiff of ordinary firmness from exercising his Constitutional Rights . . . ." (Am. Compl. at 11-12.) Second, Plaintiff argues that Defendants Morin and Patrick conspired to deny Plaintiff of his due process rights by attempting to provoke Plaintiff regarding his shoe order in order to write him up for a misconduct report or to charge him with a new crime. (*Id.* at 13-14.)

Plaintiff requests declaratory and injunctive relief and monetary damages.

II. <u>Eleventh Amendment Immunity</u>

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money

damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

        III.      <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff alleges that Defendants wrongly denied him of his new tennis shoes in violation of the Due Process Clause. The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. IV. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Plaintiff does not allege that the denial of his new tennis shoes was pursuant to an established state procedure, rather, he claims that the MDOC policy is being wrongly applied to him. Plaintiff argues that he does not own an excessive amount of shoes, which would require him to turn in a pair of shoes under MDOC policy. *See* MICH. DEP'T. OF CORR., Policy Directive 04.07.112, ¶G. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs*

*v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

### B. Retaliation

Plaintiff asserts three claims of retaliation in his complaint. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging

in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

First, Plaintiff argues that Defendants retaliated by shaking down Plaintiff's cell when Plaintiff requested MPF to comply with MDOC policy directives in regards to the purchase of his new shoes. Second, Plaintiff alleges that MPF's lack of diligence in resolving his Step I grievance for Defendants' failure to pay the initial partial filing fee is clearly suggestive of retaliation because it is not the customary practice at MPF for a grievance to be disregarded. Third, Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him for filing the present civil rights action by not paying his initial partial filing fee.

Plaintiff's first and second claims concern retaliation after the filing of a prison grievance. Because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against, Plaintiff satisfies the first requirement of *Thaddeus-X*. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Under the second requirement of *Thaddeus-X*, Plaintiff must show that there was an adverse action taken against him. An adverse action "is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X,* 175 F.3d at 396 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)). The adverse actions for which Plaintiff

complains in his first and second claims are Defendants shaking down his cell and MPF's lack of diligence in resolving his Step I grievance, respectively.

First, Plaintiff argues that Defendants retaliated by shaking down his cell after Plaintiff requested MPF to comply with their policy directives. A shake down is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). A shake-down is a proper prison security measure for ensuring that inmates do not possess contraband and/or weapons. It is not sufficiently adverse to state a claim for retaliation. Therefore, Plaintiff has failed to satisfy the adverse action requirement of *Thaddeus-X*. *See Thaddeus-X,* 175 F.3d at 396.

Second, Plaintiff alleges that MPF's lack of diligence in resolving his Step I grievance for Defendants' failure to pay the initial partial filing fee is clearly suggestive of retaliation because it is not the customary practice at MPF for a grievance to be disregarded. Once again, Plaintiff fails to satisfy the adverse action requirement of *Thaddeus-X*. *See Thaddeus-X,* 175 F.3d at 396. MPF's lack of diligence in resolving a grievance would not deter a person of ordinary firmness from exercising his or her right to file a grievance. Further, MDOC Policy Directive 03.02.130, ¶T (effective July 9, 2007), provides that a prisoner may forward a grievance "to the next step of the grievance process within ten business days after the response deadline expired, including any extension which have been granted." Plaintiff did just that. When his Step I grievance had not been resolved, he requested a Step II grievance form. As Plaintiff fails to state an adverse action, his second retaliation claim fails to state a claim.

Third, Plaintiff argues that Defendants retaliated against him for filing the present civil rights action by not paying his initial partial filing fee. The filing of a civil rights action is protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. Oct. 17, 2002). Plaintiff, however, must also show that the adverse action, the failure to pay the filing fee, was motivated by the filing of Plaintiff's civil rights action. *Thaddeus-X,* 175 F.3d at 394. Assuming he satisfies the adverse action requirement, Plaintiff must still provide sufficient factual allegations that Defendants' decision to forego paying his initial partial filing fee was motivated by the filing of this civil rights action. Plaintiff cannot satisfy the third requirement of *Thaddeus-X*. Defendant Rohn explained that Plaintiff's filing fee was not paid because "[a]ll prisoner[] Court Orders [are] being handled through Jackson Regional." (Am. Compl. at 10, docket #7.) Defendants do not have any control over employees at Jackson Regional or over the payment of Plaintiff's filing fee from another facility. Further, it is unknown whether the employees at Jackson Regional had any knowledge of this lawsuit. Jackson Regional eventually paid the initial partial filing fee, albeit three months after the Court ordered Plaintiff to pay the initial partial filing fee. Accordingly, Plaintiff fails to state a retaliation claim against Defendants for failing to pay his initial partial filing fee.

    **C.    Conspiracy**

Plaintiff asserts two claims for conspiracy. Plaintiff states that "all Defendants named in this Claim and Civil action have at one point or another conspired by adverse actions by Prison Officials sufficient to deter this Plaintiff of ordinary firmness from exercising his Constitutional Rights . . . ." (Am. Compl. at 11-12.) Plaintiff also argues that Defendants Morin and Patrick conspired to deny Plaintiff of his due process rights by attempting to provoke Plaintiff regarding his

shoe order in order to write him up for a misconduct report or to charge him with a new crime. (*Id.* at 13-14.)

To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.*, No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy.

**D.  Defendants Morin, Phillips, Armstrong, Rohn and Sattler**

Throughout his complaint, Plaintiff complains of the denial of his Step I, II and III grievances. To the extent Plaintiff argues that those Defendants should be liable for denying his grievances, Plaintiff fails to state a claim. A claimed constitutional violation must be based upon

active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (defendants could not be held liable for plaintiff's termination from his commissary job when their only roles in the action involved the denial of administrative grievances or the failure to act). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Defendants Morin, Phillips, Armstrong, Rohn and Sattler cannot be held liable under § 1983 merely because they denied Plaintiff's grievances. Accordingly, Plaintiff fails to state a claim against those Defendants for denying his grievances.

### E. MDOC Policy

In his complaint, Plaintiff also references several instances of Defendants failure to follow MDOC policy. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   November 16, 2009          /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE